UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

JOSE ANEURY THEN-PRADO,

              Defendant.

------------------------------------X

09 Cr. 385-02 (RWS)

SENTENCING OPINION

**Sweet, D.J.**

On October 15, 2009, Jose Aneury Then-Prado ("Then-Prado" or "Defendant") pleaded guilty to one count of conspiracy to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846, and one count of conspiracy to distribute five kilograms and more of cocaine and 100 grams and more of heroin, in violation of 21 U.S.C. § 846. For the reasons set forth below, Then-Prado will be sentenced to 87 months' imprisonment to be followed by five years' supervised release. Then-Prado will also be required to pay a special assessment of $200 and forfeit the proceeds of his offense.

1

**Prior Proceedings**

On October 15, 2009, Information S1 09 CR 385 (RWS) was filed in the Southern District of New York. Count 1 charges that from January 2005 and continuing until at least June 2007, in the Southern District of New York and elsewhere, Then-Prado and others conspired to distribute and possess with intent to distribute five kilograms and more of cocaine, in violation of 21 U.S.C. § 846. Count 2 charges that from September 2008, and continuing until at least March 2009, in the Southern District of New York and elsewhere, Then-Prado and others conspired to distribute and possessed with intent to distribute five kilograms and more of cocaine and 100 grams and more of heroin, in violation of 21 U.S.C. § 846.

On October 15, 2009, Then-Prado appeared before the Honorable Douglas F. Eaton in the Southern District of New York and allocuted to Counts 1 and 2.

On September 16, 2010, the Court received a letter from defense counsel, several character witnesses, and Then-Prado requesting that the Court be lenient when imposing a sentence in light of Then-Prado's family background and efforts

to improve himself, to start a family and to have a normal life.

Then-Prado's sentencing is currently scheduled for November 18, 2010.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed —

  (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

  (B) to afford adequate deterrence to criminal conduct;

  (C) to protect the public from further crimes of the defendant; and

  (D) to provide the defendant with needed educational or vocational training, medical

>             care, or other correctional treatment in the
>             most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the kinds of sentence and the sentencing range established for —
>
>     (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;
>
> (5) any pertinent policy statement . . . [issued by the Sentencing Commission];
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Then-Prado's personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

Information contained in this section is based on a criminal complaint prepared by a Special Agent with the Drug Enforcement Agency ("DEA").

At the direction of law enforcement agents, on January 12, 2009, a cooperating witness (the "CW") met with Jean Carlos Rosado-Cintron, a/k/a "Moreno" ("Rosado-Cintron"). During that meeting, Rosado-Cintron told the CW that he had multiple sources of cocaine.

Discussions between the CW and Rosado-Cintron regarding narcotics continued from January 2009 through March 18, 2009.

On March 18, 2009, Rosado-Cintron made one or more telephone calls to the CW, which call or calls were consensually recorded, stating, in substance, that he had a source of supply

which could provide 5 kilograms of cocaine. Rosado-Cintron and the CW arranged to meet in the vicinity of 1790 Amsterdam Avenue, New York, New York (the "Meet Location"), where a business called the "50/50 Barbershop" (the "Barbershop") is located, to consummate the transaction.

On March 18, 2009, at approximately 4:45 p.m., DEA agents set up surveillance of the Meet Location. Agents saw the CW, who was equipped with a recording device, approach Rosado-Cintron, who was outside of the Barbershop at the Meet Location, at approximately 5:00 or 5:15 p.m. The CW spoke with Rosado-Cintron and was introduced to Then-Prado, who was employed at the Barbershop. Rosado-Cintron, Then-Prado, and the CW spoke for about 15 minutes. Then-Prado told Rosado-Cintron, in substance, that "it" would be there in 15 minutes, which the CW overheard. Rosado-Cintron then repeated Then-Prado's statement to the CW. The CW then left the Meet Location and reported to agents that the product would be at the Meet Location in approximately 15 minutes.

On March 18, 2009, at approximately 5:30 p.m., the CW entered the vehicle from which agents were conducting surveillance. The CW then received a telephone call or calls

from Rosado-Cintron, in which Rosado-Cintron stated that Then-Prado's supplier would not be able to provide the product until approximately 7:00 p.m., and that the location should be moved to Rosado-Cintron's residence, which was in the vicinity of 123 West 197th Street, the Bronx, New York. The CW told Rosado-Cintron that he did not want to move the location because the buyer did not want to move the buyer's money. Rosado-Cintron then told the CW that he had another source of supply in the vicinity of Kingsbridge and University, who had access to kilogram amounts of cocaine, and that the transaction could occur at that location. At law enforcement direction, the CW told Rosado-Cintron that he did not want to move to another location, but would instead wait for Then-Prado's supplier.

On March 18, 2009, at approximately 6:02 p.m., Rosado-Cintron placed another telephone call to the CW, which was recorded. In that telephone call, Rosado-Cintron stated Then-Prado was speaking to a source in an SUV at that moment about getting "it." At approximately the same time, another law enforcement officer who was continuing to observe the Meet Location (the "Task Force Officer") observed Then-Prado standing near the front passenger window of a silver SUV, speaking with an unknown person. A short time later, Rosado-Cintron called

the CW back, and stated that the person in the SUV had "four," and he is going to get it "now." At approximately the same time, the Task Force Officer observed the SUV depart the Meet Location.

On March 18, 2009, at approximately 6:10 p.m., the Task Force Officer observed the SUV return to the Meet Location, and observed Ruddy Meoly, a/k/a "Fernando A. Benitez" ("Meoly") exit the SUV from the passenger side with a black bag in his hand, and enter the Barbershop. The driver of the SUV also exited the SUV and entered the Barbershop.

On March 18, 2009, at approximately 6:20 p.m., Rosado-Cintron called the CW and told him that they were ready. At law enforcement direction, the CW entered the Barbershop at approximately 6:25 p.m. At approximately 6:30 p.m., the CW called the agents and stated that there were "four" in a black bag, and that the bag was in a back room at the Barbershop. The CW also told agents that Then-Prado and Rosado-Cintron were present when the black bag was opened and when the CW cut into each kilogram of cocaine.

On March 18, 2009, at approximately 6:30 p.m., agents approached Then-Prado, Rosado-Cintron, and Meoly and arrested them. The four bricks in the black bag were each field tested for the presence of cocaine. Each brick tested positive for the presence of cocaine.

In addition to the foregoing, subsequent to additional investigation, it was learned that during the period of 2005 to 2007, Then-Prado sold kilogram quantities of cocaine on several occasions. In total, the Government estimates Then-Prado to have sold approximately 27 kilograms of cocaine. In addition, on two occasions, Then-Prado also sold 100 grams of heroin to a particular customer.

**The Relevant Statutory Provisions**

For Counts 1 and 2, pursuant to 21 U.S.C. § 841(b)(1)(A), the mandatory minimum term of imprisonment is ten years and the maximum term of imprisonment is life. Pursuant to 18 U.S.C. § 3553(f), Then-Prado meets the criteria set for imposition of a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence.

For Counts 1 and 2, if a sentence of imprisonment is imposed, a term of supervised release of at least five years is required, pursuant to 21 U.S.C. § 841(b)(1)(A). Such terms of supervised release run concurrently, pursuant to 18 U.S.C. § 3624(e).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly precluded by statute, pursuant to 18 U.S.C. § 3561(a)(2) and 21 U.S.C. § 841(b)(1)(A).

The maximum fine that may be imposed for Counts 1 and 2 is $4 million per count, pursuant to 21 U.S.C. § 841(b)(1)(B). A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

**The Guidelines**

The November 1, 2009 edition of the <u>United States Sentencing Commission Guidelines Manual</u> has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility,

and term of imprisonment:

The guideline for the violation of 21 U.S.C. § 841(b)(1)(A) is found in § 2D1.1. Defendant's criminal activity involved at least 27.25 kilograms of cocaine (17.4 kilograms in Count 1 and 9.85 kilograms in Count 2) and 200 grams of heroin. The base offense level for the instant offense is therefore 34, pursuant to the Drug Quantity Table under § 2D1.1(c)(3).

Then-Prado meets the criteria set forth in subdivisions (1)-(5) of § 5C1.2. As a result, a two-point reduction in the offense level is warranted, pursuant to § 2D1.1(b)(11).

Based on his statement and plea allocution, Defendant has shown recognition of his responsibility for the offense. Pursuant to § 3E1.1(a), the offense is reduced two levels. Furthermore, an additional one-level reduction is warranted, pursuant to § 3E1.1(b), because Defendant gave timely notice of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Court to allocate its resources efficiently.

Accordingly, the applicable offense level is 29.

According to the FBI and the New York State Division of Criminal Justice Services, Bureau of Identification, Defendant has no prior criminal convictions. Therefore, Defendant has zero criminal history points and a Criminal History Category of I, pursuant to the table at Chapter 5, Part A, of the Guidelines.

Based on a total offense level of 29 and a Criminal History Category of I, the Guidelines range for imprisonment is 87 to 108 months.

The Guidelines range for a term of supervised release is five years, the minimum required by statute, pursuant to § 5D1.2(c). However, Application Note 2 of § 5C1.1 provides that a defendant who qualifies under § 5C1.2 is not subject to a statutory minimum sentence of supervised release. Therefore, the Guidelines range for a term of supervised release is three to five years, pursuant to § 5D1.2(a)(1).

Defendant is not eligible for probation because the instant offense is one for which probation has been expressly

precluded by statute, pursuant to § 5B1.1(b)(2).

The fine range for the instant offense is $15,000 to $8 million, pursuant to § 5E1.2(c)(3)(A) and (c)(4). Subject to Defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to § 5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,270.93 to be used for imprisonment, a monthly cost of $317.32 for supervision, and a monthly cost of $2,063.19 for community confinement.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of

sentencing," <u>Kimbrough v. United States</u>, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a Guidelines sentence is warranted in the instant case.

**The Sentence**

For the instant offense, Then-Prado will be sentenced to 87 months' imprisonment on each count, to run concurrently, and 5 years' supervised release on each count, also to run concurrently.

Then-Prado is directed to report to the nearest United States Probation Office within seventy-two hours of release to commence his term of supervised release. It is recommended that Then-Prado be supervised by the district of his residence.

As mandatory conditions of his supervised release, Then-Prado shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; and (3) not possess a firearm or destructive device. The mandatory drug testing condition is suspended based on the

14

Court's determination that Defendant poses a low risk of future substance abuse.

Furthermore, the standard conditions of supervision (1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) Defendant shall obey the immigration laws and comply with the directives of immigration authorities.

(2) Defendant shall submit his person, residence, place of business, vehicle, or any other premises under his control to a search on the basis that the probation officer has reasonable belief that contraband or evidence of a violation of the conditions of the release may be found. The search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

In consideration of all the factors set forth in 18 U.S.C. § 3572(a), it does not appear that the Defendant is able to pay a fine, and so the fine in this case shall be waived.

A special assessment of $200, payable to the United States, is mandatory and shall be due immediately.

As a result of committing the controlled substance offenses alleged in Counts 1 and 2 of the Indictment, Then-Prado shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any and all property constituting or derived from any proceeds he obtained directly or indirectly as a result of his narcotics violation and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the narcotics violations alleged in Counts 1 and 2 of the Indictment.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for November 18, 2010.

It is so ordered.

**New York, NY**
**November** *17*, 2010

ROBERT W. SWEET
U.S.D.J.